## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A CRIMINAL COMPLAINT

I, Ysean Ali, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of a criminal complaint charging Carlos Vinicio Ortuno-Rivera ("defendant") with reentry of a removed alien in violation of 8 U.S.C. § 1326.

2.      I am a Border Patrol Agent-Intelligence/Prosecution Case Manager with the Border Patrol, United States Customs and Border Protection, within the United States Department of Homeland Security, and have been an agent with the Border Patrol since November 2015. I am currently assigned to the Houlton Sector Prosecution Unit, Houlton Sector Headquarters, in Hodgdon, Maine. I completed the Border Patrol Academy in May 2016, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received training in the detection, deterrence, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States. I have also received instruction regarding the detection and interdiction of illegal contraband. In the course of my employment with the Border Patrol, I have been assigned to the Highway 57 and Farm-to-Market 2644 immigration checkpoints in Texas, where I was the primary agent and involved with multiple narcotic and human smuggling cases. I have conducted numerous criminal investigations involving illicit activity. I have gathered evidence and facts pertaining to administrative and criminal immigration cases. In the course of my duties, I have taken sworn statements from material witnesses and suspects. I routinely perform record checks through various law enforcement databases to establish accuracy

of information as well as to gather facts relevant to individual cases. I have acted as a liaison between the United States Attorney's Office and field agents, and I have assisted fellow agents in the development of their cases.

3.     The information in this affidavit is based upon my review of records and information furnished to me in my official capacity—including, for example, records and information from Supervisory Border Patrol Agent-Resident Agent ("SBPA-RA") Patrick Willis, Border Patrol Agent-Resident Agent ("BPA-RA") Jeremy Myers, and Wiscasset Police Department Chief Lawrence Hesseltine—as well as information gained through my training and experience. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested arrest warrant and complaint.

<u>PROBABLE CAUSE</u>

4.     BPA-RA Myers performed a records check on the defendant and I have reviewed records demonstrating the following:

    a.  The defendant is a native and citizen of Ecuador by virtue of birth. Both of the defendant's parents are citizens of Ecuador.

    b.  A search of various systems to which the Border Patrol has access showed no claim, or potential claim, to United States citizenship.

    c.  The Border Patrol encountered the defendant within the United States on about December 30, 2009, at or near Topawa, Arizona.

    d.  On about December 31, 2009, at the Tucson, Arizona Sector Coordination Center, the defendant was asked to provide a sworn statement regarding his application for admission to the United States and was informed of his rights and the purpose and consequences of the interview. The defendant agreed to make statements and swore or affirmed that his statements were true and

complete. In Spanish—without the use of an interpreter—the defendant
acknowledged, in summary, and in part:

  i. His true and correct name is "Carlos Ortuno-Unicio." He has not used any
     other names or nicknames in the past.

  ii. He was born in Guatemala. He and his parents are citizens of Guatemala.

  iii. He never applied for, or received, U.S. immigration documents allowing
     him to apply for entry into, to remain in, or to pass through the United
     States. He did not possess any valid immigration or non-immigrant visas.

  iv. Neither he nor his parents have any claim to legal status in the United
     States.

  v. This was the first time he entered the United States. He entered on
     December 30, 2009, by crawling over the border fence near Sasabe,
     Arizona. He was not inspected by a United States immigration officer at
     the time of entry.

  vi. He came to the United States to work and planned to stay for two years.

e. Contrary to the defendant's claim to being a citizen of Guatemala, the Border
   Patrol later learned from an interview of the defendant by the Guatemalan
   consulate on about January 12, 2010, that the defendant was from Ecuador.
   The Border Patrol also later learned that the defendant's true name was
   Carlos Vinicio Ortuno-Rivera.

f. On December 31, 2009, a Deportation Officer with Immigration and Customs
   Enforcement ("ICE"), United States Department of Homeland Security,
   determined the defendant—then identified as Carlos V. Ortuno-Rivera—was
   inadmissible to the United States under Section 212(a)(7)(A)(i)(I) of the

Immigration and Nationality Act ("INA") and was subject to removal in that
he entered the United States illegally with the intent to reside in the United
States and did not possess or present a valid immigrant visa, reentry permit,
border crossing identification card, or other valid entry document. The
Deportation Officer issued an Order of Removal under Section 235(b)(1) of
the INA, finding the defendant inadmissible and ordering him removed from
the United States. The Order was personally served on the defendant on
January 13, 2010.

g. On about December 31, 2009, a Border Patrol Agent provided the defendant
with a *Notice to Alien Ordered Removed/Departure Verification*. The Notice
informed the defendant, in part:

    i. "You have been found to be inadmissible to the United States under
the provisions of section 212(a) of the Immigration and Nationality
Act (Act) or deportable under the provisions of section 237 of the
Act as a Visa Waiver Pilot Program violator. In accordance with the
provisions of section 212(a)(9) of the Act, you are prohibited from
entering, attempting to enter, or being in the United States for a
period of 5 years from the date of your departure from the United
States as a consequence of your having been found inadmissible as
an arriving alien in proceedings under section 235(b)(1) or 240 of
the Act."

    ii. "After your deportation or removal has been effected, if you desire
to reenter the United States within the period during which you are
barred, you must request and obtain permission from the Secretary

of Homeland Security to reapply for admission to the United States. You must obtain such permission before commencing your travel to the United States. Application forms for requesting such permission may be obtained by contacting any United States Consulate or office of the United States Department of Homeland Security."

    iii.  "WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000."

  h.  On February 13, 2010, the defendant was removed from the United States via expedited removal through Alexandria, Louisiana.

5.    BPA-RA Myers has conducted a review of the systems to which the Border Patrol has access that track applications for immigration benefits and actions taken regarding such applications. No pending applications or petitions filed by the defendant or on his behalf seeking consent of the Secretary of the United States Department of Homeland Security ("DHS") to reapply for admission to the United States were located, nor was any record located of the Secretary of DHS granting express consent for the defendant to reapply.

6.    I have reviewed reports from SBPA-RA Willis and Wiscasset Police Department Chief Hesseltine regarding an August 29, 2025 encounter with the

defendant. Based on my review of those reports and other materials, I am aware of the following.

a. On August 29, 2025, Chief Hesseltine was working on a detail. At approximately 6:05 a.m., while traveling south on Route 1/Bath Road in Wiscasset, Chief Hesseltine observed a van traveling north. He confirmed using radar that the vehicle was traveling 32 miles per hour in a posted 25-miles-per-hour zone. Chief Hesseltine turned around, followed the van, and conducted a traffic stop. The van pulled into a parking lot at the Lincoln County Communications Center.

b. Chief Hesseltine approached the driver's-side window of the van, asked for the driver's license and registration, and informed the driver he was being stopped for doing 32 miles per hour in a 25-miles-per-hour zone. The driver provided a Massachusetts driver's license. There was a male passenger in the front, passenger's-side seat, and three male passengers in the rear of the van.

c. Chief Hesseltine requested identification from the passengers. The front-seat passenger indicated he had no identification. The defendant was one of the rear passengers and provided a Massachusetts driver's license identifying him as Carlos Vinicio Ortuno Rivera. The other two rear passengers provided a Massachusetts driver's license and an Ecuadorian passport, respectively. Chief Hesseltine photographed the front-seat passenger to send to the Border Patrol for facial recognition.

d. Chief Hesseltine sent that photograph, as well as photographs of the passport and driver's licenses provided by the other occupants, to one or

more agents with the Border Patrol. He also asked Dispatch to run the information from the driver's licenses and sought information regarding the registered owner of the vehicle.

e.  SBPA-RA Willis responded to the scene of the traffic stop. Based upon the images provided by Chief Hesseltine, BPA-RA Matthew McLellan checked records available to the Border Patrol regarding the van's occupants. BPA-RA McLellan determined the defendant was present in the United States without legal status and had previously been removed from the United States.

f.  SBPA-RA Willis identified himself as a Border Patrol Agent and questioned the van's occupants as to their citizenship. In summary, the defendant identified himself as a citizen of Ecuador, acknowledged that he did not have any immigration documents that would allow him to be legally present in the United States, and acknowledged that he was in the United States illegally.

g.  The defendant, another passenger, and the driver were taken into custody for immigration purposes.

h.  Chief Hesseltine issued the driver a warning for the speeding violation.

i.  The defendant was subsequently transported to the Border Patrol Station in Calais, Maine. There, the defendant's identity was confirmed by submitting his fingerprints through the DHS Automated Biometric Identification System ("IDENT") and the Integrated Automated Fingerprint Identification System/Next Generation Identification ("IAFIS/NGI").

7.      On August 29, 2025, the defendant was served with an I-871 (*Notice of Intent/Decision to Reinstate Prior Order*).

8.      On August 29, 2025, at the Border Patrol Station in Calais, the defendant was advised of his rights in the Spanish language by a Border Patrol Agent. The defendant acknowledged that he understood his rights. Thereafter, the defendant agreed to make a statement under oath, without a lawyer or another person present, regarding his illegal reentry into the United States. In the Spanish language, the defendant acknowledged, in summary and in part:

    a.   His true and correct name is Carlos Vinicio Ortuno-Rivera. He has never used any other name.

    b.   His full date of birth.

    c.   His place of birth was Paute Azuay, Ecuador.

    d.   He is a citizen of Ecuador.

    e.   Though he did not remember the date, he last entered the United States through the desert in Sasabe, Arizona in 2010, fifteen years ago.

    f.   He first entered the United States in 2009 and was then deported by INS officials. He did not recall the date of his deportation but believed it occurred in 2009.

    g.   He has never applied to the Attorney General of the United States for permission to re-enter the United States after he was deported, excluded, or removed from the United States.

9.      After making his statements, the defendant signed the I-215B (*Record of Sworn Statement in Affidavit Form)* in English, affirming that the answers attributed to him in that document are true and correct to the best of his knowledge and belief and

that the statement is a full, true, and correct record of his questioning by an officer of the Immigration and Naturalization Service.

CONCLUSION

10.    Based on my training and experience and the facts as set forth in this affidavit, I submit that probable cause exists to believe that Carlos Vinicio Ortuno-Rivera is an alien and was found within the United States of America after having been previously removed therefrom on February 13, 2010, and not having obtained the express consent of the Secretary of DHS to reapply for admission to the United States in violation of 8 U.S.C. § 1326(a).

I, Ysean Ali, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under the pains and penalties of perjury.

Dated at Portland, Maine this 5th day of September, 2025.

_____
Ysean Ali, Border Patrol Agent
U.S. Customs and Border Protection
U.S. Department of Homeland Security

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedures

Date:  Sep 05 2025

City and state:  Portland, Maine

_____
*Judge's signature*

Karen Frink Wolf,  U.S. Magistrate Judge
*Printed name and title*

Page 9 of 9